980 So.2d 1134 (2008)
Dimy PARAISON, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D06-849.
District Court of Appeal of Florida, Third District.
March 26, 2008.
Rehearing and Rehearing Denied May 30, 2008.
Bill McCollum, Attorney General, and Maria Lauredo, Assistant Attorney General, for appellant.
Bennett H. Brummer, Public Defender, and Angel L. Fleming, Assistant Public Defender, for appellee.
Before COPE, RAMIREZ[*] and WELLS, JJ.
Rehearing and Rehearing En Banc Denied May 30, 2008.
WELLS, Judge.
Dimy Paraison appeals from a judgment of conviction and sentence entered following a guilty plea reserving the right to appeal denial of his motions to exclude a number of hearsay statements. We affirm the conviction and sentence finding no reversible error has been demonstrated.
Paraison's convictions for armed burglary with assault/battery, kidnapping with a weapon, and armed robbery with a firearm stem from an early morning burglary of an elderly woman, Mrs. Whitehead, during *1135 which Mrs. Whitehead was battered, robbed, and bound with duct tape. After the intruders left, Mrs. Whitehead freed herself and called emergency services and her son, Ira, whom she told that she had been robbed. On hearing this news, Ira dropped the telephone and drove to his mother's home, arriving only three to five minutes later.
When he arrived, the police were already at his mother's house. A window had been broken and the house had been ransacked. Mrs. Whitehead was found lying on the kitchen floor in her nightgown with remnants of duct tape wrapped around her wrists, face and neck. Although nervous and apparently in shock, Mrs. Whitehead was able to tell two police officers (Officers Dixon and Hayes) and her son what had occurred that night. She told them that she had been awakened by two black men brandishing guns, who told her that they knew she operated a business in Liberty City and that she kept cash in the house. She also told them that after demanding money, the intruders forced her to go from room to room; took any cash that they found and ransacked each room as they went; hit her, forced medication down her throat, and threw water in her face; threatened to lock her in the trunk of her car and abandon it; tied her to a chair with duct tape; and stole between one hundred seventy-five thousand and one million dollars in cash. She also recounted how she had freed herself after the intruders left and called emergency services and her son.
Paraison ultimately was arrested and charged with burglary of Mrs. Whitehead's home and of robbing, assaulting, and kidnapping her. After learning that Mrs. Whitehead had died, Paraison moved in limine to exclude "any mention of alleged excited utterances made by Mrs. Whitehead . . . to Detective Dixon and Officer Hayes," claiming that none of Mrs. Whitehead's statements to these officers were excited utterances admissible as an exception to the hearsay rule and that introduction of such testimony would violate Paraison's Sixth Amendment right of confrontation as recognized in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). See § 90.803(2), Fla. Stat. (2004) (excepting from section 90.802 making hearsay evidence inadmissible, "[a] statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"). Following an evidentiary hearing, the motion was denied. Paraison thereafter agreed to plead guilty as charged, expressly reserving the right to appeal as dispositive "Crawford as it relates to Ira Whitehead and as it relates to Officer Hayes."[1]
Paraison argues here that all of Mrs. Whitehead's statements to Officer Hayes must be excluded under Crawford as they are testimonial out-of-court statements by a witness unavailable for prior cross-examination and trial. We agree. In Crawford, the United States Supreme Court held that admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if "(1) the statement is testimonial, (2) the declarant is unavailable, and (3) the defendant lacked a prior opportunity for cross-examination of the declarant." State v. Lopez, 974 So.2d 340, 345 (Fla.2008). There is no dispute that Paraison had no opportunity to cross-examine Mrs. Whitehead before she died or that she is unavailable to testify at trial. Nor *1136 is there any question that her statements to Officer Hayes were testimonial.
In Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the United States Supreme Court set forth the parameters for determining whether a statement is testimonial or not. As Davis explains, non-testimonial statements are those made for the purpose of obtaining assistance to meet an ongoing emergency; testimonial statements are those made under circumstances that objectively indicate that there is no ongoing emergency and that the primary purpose of the questioning is to establish or prove past events potentially relevant to later criminal prosecution:
Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
Davis, 547 U.S. at 822, 126 S.Ct. 2266.
Thus, in Davis, the Court concluded that statements made to a 911 emergency operator while the declarant was being attacked by the defendant were non-testimonial statements; whereas, statements made by a declarant to a police officer shortly after a domestic attack which recounted the events which had already occurred were testimonial.
In this case, there was no ongoing emergency at the time Officer Hayes interviewed Mrs. Whitehead. Officer Hayes was simply interviewing the victim of a crime to ascertain the facts necessary to establish criminal activity, assist in further investigation, and further a possible future prosecution. Because Mrs. Whitehead's statements to Officer Hayes were testimonial, they fall within Crawford. And, because Paraison had no opportunity to cross-examine Mrs. Whitehead before her death and she will be unavailable to testify at trial, her statements to Officer Hayes should have been precluded. See Lopez, 974 So.2d at 345. By the same token, Mrs. Whitehead's son cannot testify as to what he overheard his mother say to Officer Hayes. However, Mrs. Whitehead's statement that she had been robbed, made while calling for help, is admissible because it is an excited utterance admissible under section 90.803(2) of the Florida Statutes and because it is non-testimonial, and thus outside Crawford, Davis, and Lopez. See Barron v. State, 32 Fla. L. Weekly D2002, ___ So.2d ___, 2007 WL 2376632 (Fla. 3d DCA Aug. 22, 2007) (concluding that two anonymous phone calls placed close to a violent event were admissible as either spontaneous statements under section 90.803(1) or excited utterances under section 90.803(2)); see also Davis, 547 U.S. at 822, 126 S.Ct. 2266 (confirming that statements made for the primary purpose of obtaining assistance are non-testimonial); Towbridge v. State, 898 So.2d 1205, 1206 (Fla. 3d DCA 2005) (holding Crawford inapplicable to non-testimonial spontaneous statements); Herrera-Vega v. State, 888 So.2d 66, 67 (Fla. 5th DCA 2004) (concluding that a spontaneous statement to a parent by a child regarding sexual abuse was not testimonial).
Mrs. Whitehead's statements to her son when he first arrived at her home are also admissible because they too are excited utterances and non-testimonial. According to Mr. Whitehead, he arrived at his mother's home only minutes after she called for help. There, he found his frightened, *1137 shaking, and hysterical mother who kept repeating to him:
Son, why they kept hitting me? I cooperate with them. . . . Baby boy, I got  I don't know why they kept hitting me, baby boy . . . they kept  went from one room to another room . . . [w]hy they keep hitting me? I gave them what they want. I had  did everything they said to do. I said I would cooperate with you. . . . They taped me up.
These statements, as the trial court found, are admissible as excited utterances. See § 90.803(2), Fla. Stat. (2004). They are also admissible because the circumstances surrounding them objectively indicate that their primary purpose was not testimonial, but to relate to a close family member what had happened to garner assistance and support. As our Supreme Court has recognized, such spontaneous statements to family or friends are not likely to be testimonial under Crawford:
Most courts agree that a spontaneous statement to a friend or family member . . . is not likely to be testimonial under Crawford. See, e.g., People v. Vigil, 127 P.3d 916, 927-28 (Colo.2006) (holding that an excited utterance a child made to his father and his father's friend immediately after a sexual assault was not testimonial); State v. Rivera, 268 Conn. 351, 844 A.2d 191, 205 (2004) (holding that statement declarant made in confidence and on his own initiative to a close family member was not testimonial); Demons v. State, 277 Ga. 724, 595 S.E.2d 76, 80 (2004) (holding that an excited utterance made to a friend was not testimonial); Woods v. State, 152 S.W.3d 105, 114 (Tex.Crim.App.2004) (holding that a codefendant's spontaneous statements to two different third-party acquaintances were not testimonial because they were casual, spontaneous "street corner" statements), cert. denied, 544 U.S. 1050, 125 S.Ct. 2295, 161 L.Ed.2d 1092 (2005); State v. Manuel, 281 Wis.2d 554, 697 N.W.2d 811, 824 (2005) (holding that a statement made by a declarant to his girlfriend in their apartment implicating the defendant in a murder was not testimonial). In fact the Supreme Court even recognized that a person who makes a casual remark to an acquaintance does not "bear testimony" in the sense that "[a]n accuser who makes a formal statement to government officers" does. Crawford, 541 U.S. at 51, 124 S.Ct. 1354; see also United States v. Manfre, 368 F.3d 832, 838 n. 1 (8th Cir.2004) (noting comments made to "loved ones or acquaintances . . . are not the kind of memorialized, judicial-process-created evidence of which Crawford speaks").
Franklin v. State, 965 So.2d 79, 91 (Fla. 2007).
In this case, Mrs. Whitehead's statements to her son were not testimonial and were, therefore, properly determined to be admissible by the court below.[2]
Because the trial court properly concluded that Mrs. Whitehead's statements directly to her son over the telephone and after he first arrived at her home were admissible, the plea agreement and sentence must be affirmed. This testimony, combined with evidence that Paraison's fingerprint was found inside Mrs. Whitehead's home; that Paraison's DNA was identified on a wool cap found inside the home; and that Paraison made an incriminating *1138 post-Miranda statement to the police, confirm that the instant ruling on application of Crawford to some of the statements made by Mrs. Whitehead is not dispositive.
The judgment and sentence on appeal are therefore affirmed.
NOTES
[*] Judge Ramirez did not hear oral argument, but participated in the decision.
[1] The prosecutor conceded that the statements made to Detective Dixon were too remote to be considered excited utterances, and the trial court excluded those statements.
[2] The fact that a police officer might have overheard this conversation between mother and son does not render it testimonial. See Mencos v. State, 909 So.2d 349, 351 (Fla. 4th DCA 2005) (confirming that a statement made by a victim to her mother which was overheard by a police officer was not testimonial).