DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**VANTAVIA B. JACKSON-JOHNSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-3602

[April 6, 2016]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen M. Miller, Judge; L.T. Case No. 502011CF001490C.

Michael Salnick and Lisa Viscome of Law Offices of Salnick, Fuchs & Bertisch, P.A., West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.

GERBER, J.

The defendant is a former corrections deputy who was convicted of official misconduct, culpable negligence, and accessory after the fact. The convictions arose out of allegations that an inmate was allowed to leave his cell and attack another inmate, and that the defendant and her co-worker falsified records in a failed attempt to cover up the incident.

A key piece of evidence leading to the defendant's convictions was a third inmate's statements on recorded jailhouse phone calls describing the incident as it occurred before him during the phone calls. The defendant primarily argues that the trial court erred in overruling her hearsay and Confrontation Clause objections to the third inmate's statements.

We conclude the trial court did not err in overruling the objections and, therefore, affirm the defendant's convictions. The third inmate's statements were admissible under the spontaneous statement exception to the hearsay rule. Also, the third inmate's statements were not testimonial. Thus, the Confrontation Clause did not bar the admission of the third inmate's statements.

We present this opinion in three parts: (1) a summary of the state's trial evidence; (2) our review of the defendant's hearsay arguments; and (3) our review of the defendant's Confrontation Clause arguments.

## 1. The State's Trial Evidence

On the day of the incident, the defendant was working as the "tower deputy" in the control tower overlooking the jail's special confinement unit. Another deputy named Daniels was working as the "floor deputy" in the special confinement unit. The special confinement unit houses inmates who have a history of violence or disciplinary issues. These inmates are locked in individual cells for twenty-three hours per day. The deputies are required to complete chronological event forms and physical observation sheets to document the inmates' activities in the special confinement unit.

Among the inmates housed in the special confinement unit that day were Taurus Turnquest and Lajuane Dunnaway.

Dunnaway testified as follows. Deputy Daniels let Turnquest out of his own cell without handcuffs, let him enter Dunnaway's cell, and then closed the cell door. Turnquest stabbed Dunnaway and cut him. Deputy Daniels opened the cell door and Dunnaway backed out of the cell and into an open area known as the dayroom. Dunnaway yelled at Turnquest and Deputy Daniels.

Dunnaway then noticed a third inmate talking on the dayroom phone available to inmates to call persons outside the jail when permitted. A written notice above the phone indicates that all calls are being recorded. Dunnaway walked over to the third inmate and yelled, "you see what he did, he cut me, he stabbed me," and showed the third inmate his wounds.

While Deputy Daniels returned Turnquest to his cell, Deputy Daniels told Dunnaway to go to the shower. While Dunnaway showered, Deputy Daniels mopped up the blood in front of Dunnaway's cell and in the dayroom.

A deputy assigned to the kitchen that day testified as follows. She went to the control tower while the defendant was working as the tower deputy. Deputy Daniels requested from the floor that Dunnaway be let into the shower, which was unusual for that day of the week. The defendant pressed a button to open the shower door for Dunnaway.

2

A deputy assigned to the unit's night shift that day testified that when he delivered dinner to Dunnaway's cell, he noticed Dunnaway's injuries. Dunnaway was escorted to the infirmary.

A recreation deputy who escorted Dunnaway to the recreation yard earlier that morning (before the incident) testified that she did not notice any injuries on Dunnaway at that time.

A detective assigned to investigate Dunnaway's injuries obtained the third inmate's recorded phone calls from around the time of the incident.

When the state sought to introduce the third inmate's recorded phone calls, the defendant objected on two grounds: (1) hearsay; and (2) violation of the Confrontation Clause.

On the Confrontation Clause objection, the defendant argued that the third inmate's statements on the recorded phone calls were testimonial, the state had not shown that the third inmate was unavailable for trial, and the state did not make the third inmate available at trial for cross-examination.

The prosecutor responded that the third inmate's statements on the recorded phone calls were admissible under what the prosecutor described as the "present sense impression" exception to the hearsay rule. The prosecutor also responded that the third inmate's statements on the recorded phone calls were not testimonial and, therefore, did not violate the Confrontation Clause.

The trial court overruled the defendant's objections.

The detective then testified about the third inmate's recorded phone calls from the dayroom. The calls were made to the third inmate's friends and family.

One call occurred from 1:38:35 pm to 1:53:33 pm. During this call, the background contained a lot of noise – the sounds of yelling and shoes scuffling across the floor. Also, the following conversation can be heard between the third inmate and the other person to whom he was speaking on the phone:

> THIRD INMATE: S--- getting real here in the box. Dep going to open the door and let these two n------ bump.
>
> OTHER PERSON: [Unintelligible].

3

> THIRD INMATE:   Hold on, I was just watching this fight real quick.
>
> OTHER PERSON: Are they bumping?
>
> THIRD INMATE:   Yeah, here in the box.

A few seconds later, Dunnaway can be heard yelling in the background.

Another call occurred from 1:58:30 pm to 2:13:28 pm.  During this call, the third inmate can be heard saying to Deputy Daniels:  "Hey, Six Nine, there's some blood right there, Six Nine."  ("Six Nine" was the inmates' nickname for Deputy Daniels, referring to his height.)

The evidence also reflected that just before the third inmate's phone call began at 1:38:35 pm, a short call was made from the floor deputy's phone to the control tower at 1:38:17 pm.  Another short call was made from the floor deputy's phone to the control tower at at 1:53:26 pm, just before the third inmate's phone call ended at 1:53:31 pm.  The state argued that the first call was Deputy Daniels calling the defendant to "get his cover" before the fight, and the second call was Deputy Daniels requesting the defendant to open the shower door for Dunnaway.

The detective obtained the defendant's and Deputy Daniels' chronological event forms and physical observation sheets from the day of the incident.  The detective compared those documents against the timeline of actual events determined from the recorded phone calls and the rest of the investigation.  The detective concluded that the defendant's and Deputy Daniels' recorded entries were inconsistent with the timeline of actual events because neither reported the incident involving Turnquest and Dunnaway.  In the detective's probable cause affidavit, the detective alleged that the defendant's recorded entries were false, and that the defendant

> failed to report or record the incident she observed which contributed to the injury of another person.  [The defendant] knew a violent crime had been committed; therefore, her actions were inappropriate in connection with her official duties . . . .   [Her] actions showed a gross and careless disregard of the safety and welfare of Dunnaway and other inmates housed in the unit.

4

The state ultimately charged the defendant with official misconduct, culpable negligence exposing a person to injury, and accessory after the fact to official misconduct. The jury found the defendant guilty on those counts. This appeal followed.

### 2. *Our Review of the Defendant's Hearsay Objection*

We review de novo the question of whether the third inmate's statements on the recorded jailhouse phone calls were admissible under an exception to the hearsay rule. *See Browne v. State*, 132 So. 3d 312, 316 (Fla. 4th DCA 2014) ("The standard of review for admissibility of evidence is abuse of discretion, limited by the rules of evidence. . . . Thus, whether evidence is admissible . . . under an exception to the hearsay rule is a question of law . . . subject to the de novo standard of review.") (citations, quotation marks, and brackets omitted).

The exception to the hearsay rule at issue here is section 90.803(1), Florida Statutes (2014), otherwise known as the spontaneous statement exception to the hearsay rule. The spontaneous statement exception provides that hearsay is admissible if it is:

> A spontaneous statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, except when such statement is made under circumstances that indicate its lack of trustworthiness.

§ 90.803(1), Fla. Stat. (2014).

The defendant argues that the spontaneous statement exception does not apply here for four reasons:

(1) the third inmate's statements — "S--- getting real here in the box. Dep going to open the door and let these two n------ bump." — were not describing an event which the third inmate was perceiving, but were in response to a statement by Deputy Daniels;

(2) the third inmate's statement — "Yeah, here in the box." — was not spontaneous because it was in response to the question "Are they bumping?" from the other person on the phone;

(3) the third inmate's pointing out blood to Deputy Daniels in the context of the statement "Hey, Six Nine, there's some blood right there, Six Nine," was not describing an event which the third inmate

5

was perceiving, but rather was describing the incident after it occurred; and

(4) the third inmate's mention of "Six Nine," a nickname for Deputy Daniels, in the context of the statement "Hey, Six Nine, there's some blood right there, Six Nine," was not a statement about what the third inmate was perceiving, but was a statement of identification.

We disagree with the defendant's arguments. We address each in turn.

First, the record does not support the defendant's argument that the third inmate's statements, "S--- getting real here in the box. Dep going to open the door and let these two n------ bump," were in response to a statement by Deputy Daniels. At best, the record shows that Deputy Daniels used the floor deputy's phone to call the control tower at 1:38:17 pm, just seconds before the third inmate's phone call began at 1:38:35 pm. The record does not indicate what, if anything, Deputy Daniels said during his phone call. Moreover, a reasonable inference could be made that the third inmate's statements were not in response to some statement by Deputy Daniels. Rather, a reasonable inference could be made that the third inmate's statements were describing his perception of Deputy Daniels allowing Turnquest out of his cell and into Dunnaway's cell to fight. As such, the third inmate's statements qualify as "[a] spontaneous statement describing or explaining an event or condition made while the declarant was perceiving the event or condition." § 90.803(1).

Second, the defendant's argument that the third inmate's statement, "Yeah, here in the box," was not spontaneous because it was in response to the question "Are they bumping?" from the other person on the phone, has been rejected by the Florida Supreme Court, one of our sister courts, and this court. *See Deparvine v. State*, 995 So. 2d 351, 370 n.20 (Fla. 2008) ("We reject [the defendant's] argument that responses to questions cannot qualify as spontaneous statements. Responses to questions do not necessarily diminish contemporaneousness."); *State v. Adams,* 683 So. 2d 517, 521 (Fla. 2d DCA 1996) ("[T]he fact that the [defendant] made the statement in response to the neighbor's questions does not, on this record, diminish its spontaneity."); *McGauley v. State,* 638 So. 2d 973, 974 (Fla. 4th DCA 1994) ("[A]n answer to a question can still be spontaneous.").

Third, the third inmate's pointing out blood to Deputy Daniels in the context of the statement "Hey, Six Nine, there's some blood right there, Six Nine," is not an attempt to describe the incident after it occurred, but merely was describing the event which the third inmate was perceiving, that is, the existence of blood on the floor. § 90.803(1).

6

Fourth, the third inmate's identification of Deputy Daniels as "Six Nine" in the context of the statement "Hey, Six Nine, there's some blood right there, Six Nine," also was admissible under the spontaneous statement exception. That is because the Florida Supreme Court, in *Deparvine*, held that a statement of identification may be admissible if it is part of a contemporaneous statement otherwise admissible under the spontaneous statement exception. 995 So. 2d at 371. That holding, and its application to this case, is better understood by examining *Deparvine*'s facts and reasoning in detail.

In *Deparvine*, a murder victim's mother testified that she received a phone call from the victim in the hours before the murder. The mother heard the sound of a car running, and asked the victim whether she was in the car. The victim responded, "I'm following Rick [her husband] and the guy that bought the truck [the defendant]." The defendant conceded that the implication asserted in the statement that the victim was following her husband was admissible under the spontaneous statement exception.

However, the defendant contended that the victim's statement that she also was following "the guy that bought the truck" was a statement of identification, which indicated reflective thought. Our supreme court rejected this contention, reasoning as follows:

> [T]he fact that [the victim] explained her contemporaneous status in terms of the presence of her husband and the other person riding in the truck, whose identities were known from past experiences, does not lessen the spontaneity or reliability based thereon. We conclude that any reflection on identity, if it could even be called reflection, is not the type of reflection that the rule would limit. Of course there should be a concern with reflection on facts indicating a lapse of time wherein the declarant had the opportunity to reflect on a past event or condition perceived. This may even encompass the exclusion of a declaration on identity where the facts indicate that the declarant was referring to a past event and had the opportunity to reflect on who the person was in that event. However, in [this] case, [the mother's] testimony indicates that [the victim] simply and spontaneously blurted out that she was then "following Rick and the guy that bought the truck" as a contemporaneous report and description of her present circumstances.

> . . . .

7

Thus, we conclude that the trial court did not err in introducing [the victim's] statement that she was "following Rick and the guy that bought the truck" as part of a contemporaneous statement admissible under the spontaneous statement exception in the evidence code.

*Id.* at 370-71 (footnote with omitted).

*Deparvine*'s reasoning applies here. The fact that the third inmate identified Deputy Daniels in the statement, "Hey, Six Nine, there's some blood right there, Six Nine," does not lessen the spontaneity or reliability based thereon. Any reflection on Deputy Daniels' identity, "if it could even be called reflection, is not the type of reflection that the rule would limit." *Id.* at 370. Thus, the third inmate's identification of Deputy Daniels in the statement, "Hey, Six Nine, there's some blood right there, Six Nine," was merely a contemporaneous description of what he saw while speaking on the dayroom phone.

*3. Our Review of the Defendant's Confrontation Clause Objection*

"In considering a trial court's ruling on admissibility of evidence over an objection based on the Confrontation Clause, [the] standard of review is *de novo*." *McWatters v. State*, 36 So. 3d 613, 637 (Fla. 2010) (citation and internal quotation marks omitted).

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

The Sixth Amendment's application to hearsay was re-examined by the United States Supreme Court in the landmark decision of *Crawford v. Washington*, 541 U.S. 36 (2004). As expressed through the late Justice Scalia's majority opinion, the Court held:

Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford . . . an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial."

8

*Id.* at 68 (footnote omitted).

Following *Crawford,* the United States Supreme Court, in *Davis v. Washington,* 547 U.S. 813 (2006), sought to spell out the difference between nontestimonial and testimonial statements. As expressed through Justice Scalia's majority opinion, the Court held:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822. In footnotes, the Court added: "Our holding refers to interrogations because . . . the statements in the cases presently before us are the products of interrogations." *Id.* at 822 n.1. Thus, the Court left open the question of "whether and when statements *made to someone other than law enforcement personnel* are 'testimonial.'" *Id.* at 823 n.2 (emphasis added).

That question has been answered by the Florida Supreme Court, this court, and one of our sister courts, in relation to spontaneous statements to a friend or family member. In *Franklin v. State,* 965 So. 2d 79 (Fla. 2007), the Florida Supreme Court observed:

> Most courts agree that a spontaneous statement to a friend or family member . . . is not likely to be testimonial under *Crawford.* . . . In fact the [United States] Supreme Court even recognized [in *Crawford*] that a person who makes a casual remark to an acquaintance does not "bear testimony" in the sense that "[a]n accuser who makes a formal statement to government officers" does.

*Id.* at 91 (citing *Crawford,* 541 U.S. at 51; other internal citations omitted); *see also Brown v. State,* 69 So. 3d 316, 319 (Fla. 4th DCA 2011) ("Most courts agree that a spontaneous statement to a friend or family member is not likely to be testimonial under *Crawford.*") (citing *Franklin,* 965 So. 2d at 91); *Paraison v. State,* 980 So. 2d 1134, 1137 (Fla. 3d DCA 2008) ("As our Supreme Court has recognized, spontaneous statements to family or friends are not likely to be testimonial under *Crawford.*") (citing *Franklin,* 965 So. 2d at 91).

9

The defendant here, however, argues that this case is distinguishable from *Franklin* and its progeny because: (1) "inmates are put on notice that their calls are recorded . . . for purposes of police investigations"; and (2) the third inmate's phone calls to his friends and family were "recorded by the sheriff's office for the purpose of law enforcement reviewing for use in criminal prosecution." In support of these distinctions, the defendant cites *Crawford*, 541 U.S. at 53, for the proposition that "[t]he involvement of government officers in the production of testimonial evidence presents the same risk, whether the officers are police or" other government officers serving an investigative and prosecutorial function.

We are unpersuaded by the defendant's argument. We hold that an inmate's spontaneous statements on recorded jailhouse phone calls, incriminating another person, are not automatically "testimonial" under the Sixth Amendment's Confrontation Clause just because they are recorded for possible later use in police investigations. Rather, in determining whether the inmate's statements are testimonial, a court should look to all of the relevant circumstances. *See Michigan v. Bryant*, 562 U.S. 344, 369 (2011) ("In determining whether a declarant's statements are testimonial, courts should look to all of the relevant circumstances."). Those circumstances include, but are not limited to, whether the inmate's statements: (1) "were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *Crawford*, 541 U.S. at 52; (2) "establish or prove past events potentially relevant to later criminal prosecution," *Davis*, 547 U.S. at 822; or (3) were "procured with a primary purpose of creating an out-of-court substitute for trial testimony," *Bryant*, 562 U.S. at 358.

Here, considering all of the relevant circumstances, we conclude that the third inmate's spontaneous statements on the recorded jailhouse phone calls were nontestimonial. The third inmate's statements: (1) were not made under circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial; (2) did not establish or prove *past* events potentially relevant to later criminal prosecution; and (3) were not procured with a primary purpose of creating an out-of-court substitute for trial testimony. Rather, the third inmate's statements to his friends and family were merely spontaneous descriptions of the incident while the third inmate was perceiving the incident. It was mere happenstance that the third inmate was describing the incident on recorded jailhouse phone calls.

Our conclusion that the third inmate's statements were nontestimonial is consistent with the single Florida Supreme Court case holding that the admission of an inmate's recorded jailhouse phone calls, including other persons' statements incriminating the inmate, does not violate the Confrontation Clause. *See Twilegar v. State*, 42 So. 3d 177, 198 (Fla. 2010) (reasoning that the inmate "was a knowing and active participant in the recorded conversations and . . . had ample opportunity to refute or contradict any of the statements that were adverse to his interests; instead, he acquiesced in the statements").

Our conclusion also is consistent with our previous cases in which we have held that a person's actions or statements are not testimonial merely because those statements were recorded by law enforcement. *See State v. Johnson*, 128 So. 3d 237, 239 (Fla. 4th DCA 2013) (video of a drug transaction involving the defendant and a confidential informant did not involve a statement made after the crime to prove a past event, but depicted the criminal act itself, and so was not testimonial); *Bowens v. State*, 80 So. 3d 1056, 1057-58 (Fla. 4th DCA 2012) (defendant's friend's statements, which were recorded while the defendant and his friend were conversing in patrol car, were nontestimonial; the conversation was not instigated or facilitated by any law enforcement officer or other person with the primary purpose of collecting evidence for criminal prosecution; instead, it was a spontaneous conversation that happened to have occurred within the range of an audio recorder); *Ferrer v. State*, 2 So. 3d 1111, 1112 (Fla. 4th DCA 2009) (defendant's statements to his codefendant on a recorded conversation at the police station were not testimonial).

Our conclusion also is consistent with cases from federal appellate courts which have rejected the adoption of a categorical rule that statements on inmates' recorded jailhouse telephone calls are testimonial, merely because correctional institutions record outgoing telephone calls and notify the participants that their conversations are being recorded. *United States v. Jones*, 716 F.3d 851, 856 (4th Cir. 2013); *United States v. Castro–Davis*, 612 F.3d 53, 65 (1st Cir. 2010). Of those two cases, *Jones* contains the more thorough reasoning:

> [W]e reject the proposition advanced by [the defendant] that a declarant's knowledge that he is being recorded is dispositive. Even if [the co-defendants] were aware that the prison was recording their conversation, a declarant's understanding that a statement could potentially serve as criminal evidence does not necessarily denote "testimonial" intent.

*Put another way, just because recorded statements are used at trial does not mean they were "created for trial."* As with 911 emergency services, a hospital, or a business, a prison has a significant institutional reason for recording phone calls outside of procuring forensic evidence – i.e., policing its own facility by monitoring prisoners' contact with individuals outside the prison. *To adopt the rule [the defendant] proposes would require us to conclude that all parties to a jailhouse phone call categorically intend to bear witness against the person their statements may ultimately incriminate.*

[The co-defendants] certainly did not speak on these phone calls for that reason. Nowhere in these casual conversations . . . do either [co-defendant] demonstrate an intent to "bear witness" against [the defendant]. In fact, any incriminating statement made during these conversations tended to also incriminate them . . . .

716 F.3d at 856 (emphasis added; internal citation omitted).

*Conclusion*

The trial court did not err in overruling the defendant's hearsay and Confrontation Clause objections. The third inmate's statements, describing the incident as it occurred before him during the recorded jailhouse phone calls, were admissible under the spontaneous statement exception to the hearsay rule. Also, the third inmate's spontaneous statements on the recorded jailhouse phone calls were not testimonial. Thus, the Confrontation Clause did not bar the admission of the third inmate's spontaneous statements on the recorded jailhouse phone calls.

The defendant also argues that the court erred in three other respects: (1) denying her request to discharge the jury when a juror was excused and replaced with the alternate after the court swore the jury but before the parties presented opening statements; (2) denying her request to give a special jury instruction on circumstantial evidence; and (3) denying her motion for judgment of acquittal. We affirm on these arguments without further discussion.

*Affirmed.*

MAY and DAMOORGIAN, JJ., concur.

* * *

*Not final until disposition of timely filed motion for rehearing.*