SUMMARY August 22, 2024 2024COA94 No. 22CA1805, People v. Perez — Constitutional Law — Sixth Amendment — Confrontation Clause — Recorded Jailhouse Phone Calls — Testimonial Statements A division of the court of appeals considers, for the first time, whether the admission of recorded jailhouse calls between the defendant and his mother, who did not testify at trial, violated the Confrontation Clause. The division holds that such statements are not testimonial and, therefore, that no constitutional violation occurred. The division further holds that no instructional error occurred, that the court did not abuse its discretion by denying the defendant’s motion for a mistrial, and that no cumulative error occurred. Accordingly, the judgment is affirmed. The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion. 
 COLORADO COURT OF APPEALS 2024COA94 Court of Appeals No. 22CA1805 Otero County District Court No. 21CR71 Honorable Mark A. MacDonnell, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Matthew Perez, Defendant-Appellant. JUDGMENT AFFIRMED Division VI Opinion by JUDGE FREYRE Lipinsky and Schutz, JJ., concur Announced August 22, 2024 Philip J. Weiser, Attorney General, Jessica E. Ross, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Lauretta A. Martin Neff, Alternate Defense Counsel, Montrose, Colorado, for Defendant-Appellant 
 1 ¶ 1 Defendant, Matthew Perez, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree murder. We affirm. I. Background ¶ 2 On May 14, 2021, Perez and his girlfriend drove from New Mexico to their home in Kansas. The pair decided to stop in La Junta, Colorado. While in La Junta, they stopped at an apartment complex looking for the victim, E.A. Witnesses testified that Perez was banging on doors and asking where E.A.’s apartment was. One witness testified that Perez asked them to tell E.A. that “Cuz is looking for him.” Perez then said, “[B]ang, bang motherfucker.” Another witness testified that Perez said, “Tell [E.A.], his cousin Lucky is looking for him.” Perez eventually parked his car at the apartment complex, where he waited for E.A. A witness testified that, when E.A. drove up, Perez got out of his own car and shot E.A “instantaneously” while E.A. was seated in his car. However, according to Perez’s girlfriend, E.A. pulled a gun on Perez before Perez shot him. ¶ 3 Following the shooting, Perez and his girlfriend fled to Kansas. The police found E.A.’s body slumped over in the front driver’s seat 
 2 toward the front of the car. They found a handgun under E.A.’s right arm, between his body and the emergency brake. ¶ 4 After his arrest, Perez claimed that he was never in La Junta and had not seen E.A. in a long time. However, once police matched shell casings from the scene to his mother’s boyfriend’s missing gun, Perez changed his defense. Perez then asserted that he shot E.A. in self-defense because E.A. had pulled a gun on him first. ¶ 5 The jury found Perez guilty of first degree murder. The trial court sentenced him to life without parole in the custody of the Department of Corrections. ¶ 6 Perez challenges his conviction on four grounds and contends that cumulative error requires reversal. His first contention — that the trial court’s admission of jail phone calls between him and his mother, F.P., violated his constitutional right of confrontation because the statements were testimonial and he had no opportunity to cross-examine F.P. — raises a novel issue. Consistent with other jurisdictions that have applied the well-settled definition of “testimonial” articulated by the United States Supreme Court, we conclude F.P.’s statements were not testimonial and, thus, that no 
 3 Confrontation Clause violation occurred. We also reject Perez’s contentions that the trial court erroneously instructed the jury on the provocation exception to self-defense, that it erred by refusing to define provocation, that it erred by denying his mistrial motion, and that he was denied a fair trial by virtue of the cumulative effect of these errors. II. Confrontation Clause ¶ 7 Perez contends that the court violated his Sixth Amendment confrontation rights by allowing the prosecution to play jailhouse phone calls between him and F.P. He argues that the phone calls included testimonial statements by F.P., who did not testify at trial and was not subject to cross-examination. We disagree. A. Additional Facts ¶ 8 While Perez was in jail awaiting trial, he and F.P. discussed his defense strategy in two phone calls. F.P. said she wanted Perez to maintain his alibi defense. But Perez said that was no longer possible because the shell casings from F.P.’s boyfriend’s missing gun matched the shell casings at the crime scene. Perez then told F.P. that “they have a self-defense law here in Colorado, so. You know what I mean?” 
 4 ¶ 9 F.P. was charged as an accessory after the fact, invoked her Fifth Amendment privilege against self-incrimination, and refused to testify at Perez’s trial. Due to her unavailability and his inability to cross-examine F.P. before or at trial, Perez objected to the admissibility of the phone calls based on relevance, unfair prejudice that outweighed the probative value, hearsay, and violation of his rights of confrontation, to not testify, and to confidential counsel. Perez raised only his challenge to the Confrontation Clause on appeal. Therefore, we deem the remaining challenges abandoned. See People v. Rodriguez, 914 P.2d 230, 249 (Colo. 1996) (failure to reassert on appeal certain claims constitutes a conscious relinquishment of those claims). ¶ 10 The trial court found that F.P.’s statements were not testimonial
1
. It reasoned that, other than recording the phone calls, the calls involved no other governmental activity. The court also said that an objective witness in F.P.’s position would not have 1 The court made no hearsay findings, and neither party alleges on appeal that F.P.’s statements were not hearsay. Therefore, we assume, without deciding, that they were for the purpose of our analysis. 
 5 believed they were making testimonial statements for later use in a criminal prosecution. B. Standard of Review and Controlling Law ¶ 11 We review de novo whether the trial court’s admission of evidence violated a defendant’s rights under the Confrontation Clause and apply the constitutional harmless error standard to any error. People v. McFee, 2016 COA 97, ¶ 28; People v. Johnson, 2019 COA 159, ¶ 49, aff’d, 2021 CO 35. If the court erred, reversal is required unless the reviewing court is “confident beyond a reasonable doubt that the error did not contribute to the guilty verdict.” Nicholls v. People, 2017 CO 71, ¶ 17 (quoting Bernal v. People, 44 P.3d 184, 198, 200 (Colo. 2002)). ¶ 12 The Confrontation Clause guarantees that, “[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.” U.S. Const. amend. VI. Because the provision applies to “witnesses” against the accused, the Confrontation Clause is implicated only when “testimonial” hearsay statements are at issue. Crawford v. Washington, 541 U.S. 36, 51 (2004). 
 6 ¶ 13 Statements are testimonial when “the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.” Davis v. Washington, 547 U.S. 813, 822 (2006). The “core class of testimonial statements” includes “statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310 (2009) (quoting Crawford, 541 U.S. at 51-52). C. Analysis ¶ 14 We conclude that F.P.’s statements were not testimonial because an objective person in her position would not have reasonably believed the statements would be used in Perez’s prosecution, despite knowing the statements were recorded. Perez points to no evidence to show that the purpose of the calls was to obtain evidence for prosecuting criminal cases. Nor does the record show that the government played any role in inducing a conversation between Perez and F.P. for the purpose of prosecution. Instead, the content of F.P.’s inculpatory statements, in which she 
 7 implicated herself as an accessory, reflects a reasonable belief that her statements would not be used against her but would assist Perez in defending himself, thus, supporting our conclusion. See Crawford, 541 U.S. at 51 (noting that a formal statement to a government officer “bears testimony” in a sense that a person making casual remarks does not); United States v. Jones, 716 F.3d 851, 856 (4th Cir. 2013) (statements by two people implicating themselves in a fraudulent scheme showed statements were not for purpose of bearing testimony against the defendant). Thus, the primary purpose of the phone calls was not to assist the prosecution or create a record for criminal prosecution but instead to establish and further Perez’s theory of defense. ¶ 15 Our conclusion is supported by decisions from courts in other jurisdictions that have determined that jailhouse phone calls are not testimonial. For example, in United States v. Alcorta, Alcorta challenged the admission of several recorded jailhouse phone calls among co-conspirators. 853 F.3d 1123, 1137 (10th Cir. 2017). The court noted that a statement is testimonial if it is made with the primary purpose of creating evidence for the prosecution. Id. Because none of the criminal codefendants were cooperating with 
 8 the government, the court concluded that their statements could not be testimonial. Id.; see also Jackson-Johnson v. State, 188 So. 3d 133, 141 (Fla. Dist. Ct. App. 2016) (jailhouse phone calls, including other persons’ statements incriminating the inmate, do not automatically violate the Confrontation Clause). ¶ 16 Additionally, in United States v. LeBeau, LeBeau argued that statements made by a co-conspirator during jailhouse phone calls were testimonial because a message played at the beginning of every call informed the co-conspirator that his calls were being recorded, and the co-conspirator admitted that he knew his calls were being recorded. 867 F.3d 960, 980-81 (8th Cir. 2017). The court held that the statements were not testimonial, however, because, although the co-conspirator knew that law enforcement might listen to the calls and use them as evidence, the primary purpose of the calls was to further a conspiracy, not to create evidence for criminal prosecution. Id.; see also Jones, 716 F.3d at 856 (rejecting argument that knowledge of the recording alone renders statements testimonial); United States v. Cabrera-Beltran, 660 F.3d 742, 752 (4th Cir. 2011) (noting that use of statements at trial does not mean they were created for trial); Nicholls v. State, 
 9 630 S.W.3d 443, 450 (Tex. App. 2021) (jailhouse call in which the participants knew the call was being recorded were not testimonial). ¶ 17 Like the calls in these cases, the primary purpose of F.P.’s statements was to discuss Perez’s theory of defense, not to develop a record for the prosecution. See United States v. Manfre, 368 F.3d 832, 838 n.1 (8th Cir. 2004) (“[Declarant’s] comments were made to loved ones or acquaintances and are not the kind of memorialized, judicial-process-created evidence of which Crawford speaks.”); McClurkin v. State, 113 A.3d 1111, 1121 (Md. Ct. Spec. App. 2015) (statements made during jailhouse phone call were not testimonial, as the primary purpose of the call was to induce the victim to change his account of who was involved in the shooting). ¶ 18 Because we conclude F.P.’s statements were not testimonial, there was no Confrontation Clause violation. III. Provocation Jury Instruction ¶ 19 Perez next contends there was insufficient evidence to support instructing the jury on the provocation exception to self-defense and that the trial court erroneously failed to define provocation. We disagree. 
 10 A. Additional Facts ¶ 20 The court instructed the jury on self-defense in Instruction No. 17, which read, The evidence in this case has raised the affirmative defense of “deadly physical force in defense of a person,” as a defense to Murder in the First Degree and Murder in the Second Degree. The defendant is legally authorized to use deadly force upon another person without first retreating if: 1. he used deadly physical force in order to defend himself from what he reasonably believed to be the use or imminent use of unlawful physical force by that other person, and 2. he reasonably believed a lesser degree of force was inadequate, and 3. he had reasonable ground to believe, and did believe, that he or another person was in imminent danger of being killed or of receiving great bodily injury, and 4.he did not, with the intent to cause bodily injury or death to another person, provoke the use of unlawful physical force by that person, 5. he was not the initial aggressor, or, if he was the initial aggressor, he had withdrawn from the encounter and effectively communicated to the other person his intent to do so, and the other person nevertheless 
 11 continued or threatened the use of unlawful physical force. The prosecution has the burden to prove, beyond a reasonable doubt, that the defendant’s conduct was not legally authorized by this defense. In order to meet this burden of proof, the prosecution must disprove, beyond a reasonable doubt, at least one of the above numbered conditions. After considering all the evidence, if you decide the prosecution has failed to meet this burden of proof, then the prosecution has failed to prove the defendant’s conduct was not legally authorized by this defense, which is an essential element of Murder in the First Degree and Murder in the Second Degree. In that event, you must return a verdict of not guilty on those offenses. After considering all the evidence, if you decide the prosecution has met this burden of proof, then the prosecution has proved the defendant’s conduct was not legally authorized by this defense. In that event, your verdict concerning the charges of Murder in the First Degree and Murder in the Second Degree must depend upon your determination whether the prosecution has met its burden of proof with respect to the remaining elements of those offenses. ¶ 21 The court reviewed the jury instructions, including the portion of the instructions addressing the exceptions to self-defense, with both parties. 
 12 ¶ 22 While Perez’s attorney objected to the combat by agreement exception to self-defense, counsel did not object to the provocation exception, and the court did not discuss the exception further. In closing argument, the prosecutor said, So in order for this to be a self-defense case, Matthew Perez, must have — and this will be in your instructions — reasonably believed that there was an imminent use of unlawful physical force . . . . And here’s another part: He did not provoke the use of unlawful physical force, and he was not the initial aggressor. Well, we know, of course, and we’ve shown you beyond a reasonable doubt that that’s not true. Matthew Perez was the — he was the initial aggressor here. He did provoke the use of force. He was there waiting for [E.A.] and rushed up to his car. And he shot him in the head three times. Because this was an ambush. ¶ 23 Perez contends that no evidence established that he provoked E.A. into pulling a gun on him. He argues that the trial evidence only shows that Perez was waiting in the parking lot for E.A. and that there was no evidence E.A. knew that Perez was looking for him or why Perez was waiting for him. ¶ 24 The People respond that there was “some evidence” to support the instruction because the jury could have inferred that the message that “Lucky” or “Cuz” was looking for E.A. would reach 
 13 E.A. One witness testified that Perez “[s]eemed mad.” The same witness called E.A.’s nephew and told him that someone was looking for E.A. Multiple witnesses testified that Perez was looking for E.A. by banging on doors. Another witness testified that Perez said, “[B]ang, bang motherfucker” shortly before the shooting. Based on this evidence, the People contend that, in the absence of the provocation exception, a jury could have concluded that E.A. showed up armed and pulled a gun on Perez, so Perez shot him in self-defense. Thus, the People conclude, the instruction was appropriate. B. Giving the Instruction 1. Standard of Review and Controlling Law ¶ 25 We review de novo whether sufficient evidence exists to support giving an instruction. Castillo v. People, 2018 CO 62, ¶ 32. In doing so, we view the evidence in the light most favorable to giving the instruction. Id. at ¶ 13. ¶ 26 The parties agree that the issue is unpreserved. Therefore, we will review any error for plain error. See Hagos v. People, 2012 CO 63, ¶ 14. Plain error is error that is obvious and substantial. Id. We consider whether the error was plain “at the time it [wa]s made.” 
 14 People v. Crabtree, 2024 CO 40M, ¶ 72. An error is obvious if “it was so clear cut and so obvious that a trial judge should have been able to avoid it without [the] benefit of objection.” People v. Conyac, 2014 COA 8M, ¶ 54; accord Cardman v. People, 2019 CO 73, ¶ 34. An error is “substantial” enough to warrant reversal if it “so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.” Cardman, ¶ 19. ¶ 27 A defendant has a right to use physical force to defend himself from the use or imminent use of force by another person. § 18-1-704(1), C.R.S. 2024. However, the right is limited. “One way for the prosecution to defeat a claim of self-defense is to prove beyond a reasonable doubt that an exception to self-defense applies.” Castillo, ¶ 40. Provocation is one such exception. ¶ 28 A provocation instruction is authorized when (1) the other person uses unlawful physical force against [the defendant]; (2) the defendant provoked the use of such physical force by the other person; and (3) the defendant intended his provocation to goad the other person into attacking him [or her] in order to provide a pretext to injure or kill that person. 
 15 People v. Roberts-Bicking, 2021 COA 12, ¶ 37 (quoting Galvan v. People, 2020 CO 82, ¶ 19). ¶ 29 Instructing the jury on a principle of law is appropriate when there is “some evidence” to support the instruction. People v. Zukowski, 260 P.3d 339, 347 (Colo. App. 2010). “[S]ome evidence” is equivalent to “any credible [even if highly improbable] evidence,” “a scintilla of evidence,” “a small quantum of evidence,” and “any evidence.” Galvan, ¶ 24. 2. Analysis ¶ 30 To justify this instruction, there had to be some evidence that (1) E.A. used unlawful physical force against Perez; (2) Perez provoked the use of such force by E.A.; and (3) Perez intended his provocation to goad E.A. into attacking him to provide a pretext for him to injure or kill E.A. See Galvan, ¶ 19. ¶ 31 Viewing the evidence in the light most favorable to giving the instruction, we conclude that sufficient evidence supports the instruction. The record supports the inference that E.A. came to the apartment complex armed and pulled a gun on Perez because he had heard that Perez was angrily looking for him, banging on doors, and making threatening comments. While we acknowledge 
 16 that the provocation evidence was weak, because “some evidence” includes any credible, even if improbable, we conclude that the record supports the court’s decision to instruct the jury on the provocation exception. See id. at ¶ 24. ¶ 32 However, even assuming the court erred, the error was not plain. While “superfluous instructions limiting self-defense may be prejudicial” because “the jury is likely to try to fit facts into an erroneously given instruction,” we do not think that is the case here. Castillo, ¶ 61. The prosecutor mentioned the provocation exception in closing, but did so only briefly. The provocation exception was not otherwise mentioned during the trial. Therefore, even assuming there was a lack of evidence supporting the provocation exception, we cannot conclude that the jury would have attempted to force the other evidence to fit the exception. Consequently, any error would not have been “substantial.” See People v. Ujaama, 2012 COA 36, ¶ 41. ¶ 33 Accordingly, we discern no basis for reversal. 
 17 C. Provocation Definition 1. Standard of Review and Controlling Law ¶ 34 We review de novo whether jury instructions adequately informed the jury of the governing law. Garcia v. People, 2023 CO 30, ¶ 9. We review a trial court’s decision to give, or not to give, a particular jury instruction for an abuse of discretion. People v. Payne, 2019 COA 167, ¶ 16. A trial court does not abuse its discretion unless its decision was manifestly arbitrary, unreasonable, or unfair or was based on an erroneous understanding of the law. People v. Esparza-Treto, 282 P.3d 471, 480 (Colo. App. 2011). ¶ 35 Again, the parties agree that the issue is unpreserved. Therefore, we review any error under the plain error standard. See Hagos, ¶ 14. ¶ 36 “We consider ‘not only whether the jury instructions faithfully track the law but also whether the instructions are confusing or may mislead the jury.’” Garcia, 2023 CO 30, ¶ 9 (quoting Garcia v. People, 2022 CO 6, ¶ 16). “[I]f a statutory definition does not adequately inform the jury of the governing law, additional instructions are required.” People v. Mendenhall, 2015 COA 107M, 
 18 ¶ 24. Definitions should be provided for technical terms. Garcia, 2023 CO 30, ¶ 20. Alternatively, when “a term, word, or phrase in a jury instruction is one with which reasonable persons of common intelligence would be familiar, and its meaning is not so technical or mysterious as to create confusion in jurors’ minds as to its meaning, an instruction defining it is not required.” Id. (quoting Day v. Johnson, 255 P.3d 1064, 1070 (Colo. 2011)). 2. Analysis ¶ 37 Perez contends that the provocation exception requires the prosecution to prove that the defendant intended to provoke the victim and because provocation is part of the element of intent, the court was required to define it. ¶ 38 While the statute does not include a definition of provocation, we conclude that persons of reasonable intelligence would be familiar with its meaning, which is neither mysterious nor technical. “Provocation” is “the act of provoking.” Merriam-Webster Dictionary, https://perma.cc/35PA-ASKR. “Provoke” means “to call forth (a feeling, action, etc.)” or “to stir up purposely.” Merriam-Webster Dictionary, https://perma.cc/C3YQ-ZDG2. The dictionary definition is consistent with the language used in 
 19 Colorado cases. See People v. Roberts-Bicking, 2021 COA 12, ¶ 37 (provoke means to goad). Accordingly, we reject Perez’s assertion that “provocation” is a technical term the court was required to further define. Moreover, nothing in the record indicates that the jury was confused about its meaning. ¶ 39 Accordingly, the trial court did not err by failing to further define provocation. IV. Mistrial Request ¶ 40 Perez contends that the trial court erroneously denied his mistrial motion after a law enforcement agent mentioned linking the moniker “Lucky,” which was also a moniker that Perez used, to a person who had recently been released on parole in Kansas. We discern no abuse of discretion in the trial court’s ruling. A. Additional Facts ¶ 41 Joseph Somosky, a field agent with the Colorado Bureau of Investigation, testified at trial. During direct examination, the following exchange took place: PROSECUTOR: So after you speak with [a witness], what do you do next, still, that night or early morning hours? 
 20 SOMOSKY: We started working on that name. I had some remote help from another agent, kind of working the Kansas side through law enforcement databases to try to drill down on that nickname or street moniker of Lucky, which we did find some matching information in the Kansas Department of Corrections database for a subject who was recently released on parole. ¶ 42 Defense counsel objected and moved for a mistrial. The court recessed for the day. The next morning, the court gave the jury a limiting instruction, saying, The Court recessed at the conclusion of the day yesterday because Agent Somosky broke a court rule in relation to his testimony. The Court is going to give a limiting instruction in reference to that. The jury is required to disregard the last statements of Agent Somosky. The statement was not referenced again. B. Standard of Review and Controlling Law ¶ 43 “A trial court has broad discretion to grant or deny a mistrial, and its decision will not be disturbed on appeal absent an abuse of discretion and prejudice to the defendant.” People v. Salas, 2017 COA 63, ¶ 9. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or when it misconstrues that law. People v. Marko, 2015 COA 139, ¶ 29, aff’d 
 21 on other grounds, 2018 CO 97. A mistrial “is only warranted where the prejudice to the accused is too substantial to be remedied by other means.” People v. Collins, 730 P.2d 293, 303 (Colo. 1986). ¶ 44 Factors bearing on whether a mistrial is warranted include the weight of admissible evidence of the defendant’s guilt and the value of a cautionary instruction. People v. Tillery, 231 P.3d 36, 42 (Colo. App. 2009), aff’d sub nom. People v. Simon, 266 P.3d 1099 (Colo. 2011). Inadmissible evidence will inflict less prejudice if it appears only in a fleeting reference. People v. Lahr, 2013 COA 57, ¶ 24. ¶ 45 “In general, evidence of an accused’s prior criminal acts is inadmissible.” People v. Abbott, 690 P.2d 1263, 1269 (Colo. 1984). C. Analysis ¶ 46 We agree that Agent Somosky’s comment was improper. However, we conclude, for two reasons, that the trial court did not abuse its discretion by denying the motion for a mistrial. ¶ 47 First, the comment was fleeting; Agent Somosky only mentioned it once, and the prosecutor did not refer to it later in the trial. See Abbott, 690 P.2d at 1269 (concluding that the denial of mistrial was not error, in part because the witness’s insinuation 
 22 that the defendant had a criminal record was a single nonresponsive remark). ¶ 48 Second, the comment was mitigated by the trial court’s limiting instruction to disregard the statement. See People v. Cousins, 181 P.3d 365, 373 (Colo. App. 2007). Absent evidence to the contrary, we presume that the jury understood and followed the court’s instruction. See Garcia, 2023 CO 30, ¶ 20. ¶ 49 Accordingly, while Agent Somosky’s comment was improper, we conclude that it did not influence the verdict and that the trial court’s ruling denying a mistrial was not an abuse of discretion. V. Cumulative Error ¶ 50 Finally, Perez contends that the trial court’s combined errors amounted to cumulative error. Cumulative error occurs when the aggregate effect of individual errors shows the absence of a fair trial. Howard-Walker v. People, 2019 CO 69, ¶ 26. ¶ 51 First, we note that Perez raises two new arguments as part of his cumulative error claim — the denial of defense evidence and prosecutorial misconduct. Because these issues are undeveloped, we decline to consider them in our analysis. See People v. Curtis, 
 23 2021 COA 103, ¶ 36 (declining to address an undeveloped argument). ¶ 52 Next, while we have found one error, and assumed an error for the purpose of analysis, we conclude no cumulative error occurred because the record established overwhelming evidence of guilt and thus, the cumulative effect of any error was slight. People v. Vialpando, 2022 CO 28, ¶ 46. Witnesses described Perez immediately shooting the victim, contrary to his self-defense claim, and the jailhouse calls and Perez’s girlfriend’s testimony showed the self-defense claim was contrived. When viewed cumulatively and against the backdrop of the other evidence, we conclude Perez was not deprived of a fair trial. Id.; see also People v. Martinez, 2020 COA 141, ¶ 89 (identifying two errors and declining to reverse for cumulative error given overwhelming evidence of guilt). VI. Disposition ¶ 53 The judgment is affirmed. JUDGE LIPINSKY and JUDGE SCHUTZ concur.