24CA1215 Peo v Torres 04-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1215
Jefferson County District Court No. 22CR3400
Honorable Christopher Zenisek, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Anthony David Torres,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE LIPINSKY
Welling and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 2, 2026

---

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Julia Chamberlin, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶1     Anthony David Torres appeals the judgment of conviction entered on a jury verdict finding him guilty of one count of driving under the influence (DUI) (fourth or subsequent offense).  We affirm.

## I.     Background

¶2     A jury could have reasonably found the following facts from the evidence introduced at trial.

¶3     One evening, Sergeant Joshua Mazone checked on a stalled car that was stopped in the street.  As he approached the car, Sergeant Mazone saw that it "appeared to be damaged" and "wasn't moving," although he could hear its engine revving.

¶4     When Sergeant Mazone reached the car, he saw Torres step out of the driver's seat.  "Right off the bat," Sergeant Mazone noticed that Torres exhibited signs of intoxication.

¶5     Sergeant Mazone began questioning Torres.  While speaking with Sergeant Mazone, Torres made several incriminating statements, including "I'm drunk" and "Yup, I'm a DUI."  Moreover, Torres told Sergeant Mazone he had three prior DUIs.

1

¶ 6      Detective Brian Wonderly arrived shortly thereafter to assist. Torres admitted to Detective Wonderly that he had been driving and had damaged the car.

¶ 7      After Torres made these incriminating statements, Detective Wonderly handcuffed him and placed him in a patrol car.  Officer David Gustafson then arrived and drove Torres to a police station, where Torres was read his *Miranda* rights.  *See Miranda v. Arizona,* 384 U.S. 436, 478-79 (1966).

¶ 8      Torres was charged with three counts:

(1)   DUI (fourth or subsequent offense), in violation of section 42-4-1301(1)(a), C.R.S. 2025;

(2)   driving after revocation prohibited (habitual traffic offender), in violation of section 42-2-206(1)(a), C.R.S. 2025; and

(3)   careless driving, in violation of section 42-4-1402(1), (2)(a), C.R.S. 2025.

¶ 9      Defense counsel filed a pretrial motion to suppress all of Torres's incriminating statements to Sergeant Mazone and Detective Wonderly.  The trial court denied the motion, and the case

proceeded to trial. At trial, Torres exercised his constitutional right not to testify.

¶ 10 The prosecution played for the jury Sergeant Mazone's and Detective Wonderly's bodycam videos from the night of Torres's arrest.

¶ 11 To prove Torres's prior DUI convictions, the prosecution tendered a certification of records for Torres's Department of Motor Vehicles (DMV) driver history, including a Criminal Justice Information Services Mittimus Form documenting that Torres had been convicted of "Driving Under the Influence-W/3+ Priors" in Denver on August 6, 2018, and Torres's associated mugshot. Further, the prosecution produced a redacted certified DMV driver history showing that Torres had four prior DUI convictions: (1) the 2018 conviction noted above; (2) a 2004 conviction in Denver; (3) a 2002 driving while ability impaired (DWAI) conviction in Arapahoe County; and (4) a 1999 DWAI conviction in Arapahoe County. (We refer to these documents jointly as the certified records.)

¶ 12 The prosecution introduced the certified records through Officer Gustafson, whom defense counsel sought to cross-examine about the "crucial legal distinction" between the two types of DUI

"convictions" that can appear in DMV records — those resulting from a DMV administrative determination and those imposed by a court. The trial court precluded such cross-examination, however.

¶ 13    The jury convicted Torres of one count of DUI (fourth or subsequent offense), a class four felony, and one count of careless driving. (The prosecution dismissed the driving after revocation count. Torres does not appeal his careless driving conviction.)

¶ 14    The trial court sentenced Torres to six years in community corrections on the DUI count and time served on the careless driving count.

¶ 15    On appeal, Torres challenges his conviction for felony DUI on three grounds:

    (1)    The trial court erred by admitting his incriminating statements to Sergeant Mazone and Detective Wonderly because they were the product of a custodial interrogation conducted without a *Miranda* warning.

    (2)    The court erred by denying defense counsel the opportunity to cross-examine Officer Gustafson regarding the various types of convictions that may appear on DMV records.

(3)     The court plainly erred and violated Torres's Confrontation Clause rights by admitting a DMV records custodian's attestation that Torres was "the only subject with this name and date of birth" in the DMV's records.

¶ 16     We affirm.

## II.     Analysis

### A.     The Trial Court Did Not Err by Denying the Motion to Suppress

#### 1.     Standard of Review

¶ 17     "[W]e defer to the trial court's findings of fact when they are supported by the record but review its legal conclusions de novo." *People v. Alemayehu*, 2021 COA 69, ¶ 24, 494 P.3d 98, 104. Therefore, we review de novo the trial court's ultimate custody determination. *People v. Eugene*, 2024 CO 59, ¶ 13, 555 P.3d 601, 604.

#### 2.     *Miranda* Warnings

¶ 18     "To protect a suspect's Fifth Amendment right against self-incrimination, *Miranda* prohibits the prosecution from introducing in its case-in-chief any statement, whether inculpatory or exculpatory, procured by custodial interrogation, unless the police precede their interrogation with certain warnings." *Effland v.*

5

*People*, 240 P.3d 868, 873 (Colo. 2010).  "Accordingly, *Miranda*

protections only apply when a suspect is subject to both custody

and interrogation."  *Id.*

¶ 19    "In determining whether an individual has been subjected to

custodial interrogation, the relevant inquiry is 'whether a

reasonable person in the suspect's position would believe himself to

be deprived of his freedom of action to the degree associated with a

formal arrest.'"  *Id.* at 874 (quoting *People v. Hankins*, 201 P.3d

1215, 1218 (Colo. 2009)).  This inquiry (the factor analysis) involves

several nonexclusive factors, including the following:

> (1) the time, place, and purpose of the
> encounter; (2) the persons present during the
> interrogation; (3) the words spoken by the
> officer to the defendant; (4) the officer's tone of
> voice and general demeanor; (5) the length and
> mood of the interrogation; (6) whether any
> limitation of movement or other form of
> restraint was placed on the defendant during
> the interrogation; (7) the officer's response to
> any questions asked by the defendant;
> (8) whether directions were given to the
> defendant during the interrogation; and (9) the
> defendant's verbal or nonverbal response to
> such directions.

*Id.* (quoting *People v. Matheny*, 46 P.3d 453, 465-66 (Colo. 2002));
*see People v. Sampson*, 2017 CO 100, ¶ 18, 404 P.3d 273, 276-77.
"No one factor is determinative." *Effland*, 240 P.3d at 874.

### 3. Additional Facts

¶ 20　　The court conducted two evidentiary hearings on Torres's motion to suppress. At the hearings, Sergeant Mazone and Detective Wonderly testified about their interactions with Torres and the circumstances of his arrest. In addition, the prosecution provided the court with Sergeant Mazone's and Detective Wonderly's bodycam videos from the night of Torres's arrest.

¶ 21　　Sergeant Mazone testified that he walked over to investigate the car because it was facing the wrong way on the street. His testimony and bodycam video showed the following:

- Torres stepped out of the car, which was parked against a curb and was apparently nonfunctional. He appeared to have urinated on himself and had difficulty maintaining his balance. Sergeant Mazone told Torres to "[p]ut [his] butt up" against the car's trunk.

- Sergeant Mazone informed police dispatch by radio that he had encountered an "intoxicated party." (He testified

7

that he could smell alcohol emanating from Torres.) Sergeant Mazone requested Torres's identification and asked him for basic information, such as his name, date of birth, and address.  In answering Sergeant Mazone's questions, Torres noticeably slurred his speech and seemed to have difficulty remembering his address.

- Sergeant Mazone asked Torres how much he had had to drink that night.  Torres replied, "Uh, a couple." Sergeant Mazone then told dispatch, "This [case] will be a DUI."  Without prompting, Torres said, "Yup.  I'm a DUI," before he lost his balance and nearly fell over.

- Torres then said — again without prompting — "I'm drunk."  In response to Sergeant Mazone's question about his number of prior DUIs, Torres said, "three." Torres then asked, "Are you gonna arrest me?"  Sergeant Mazone replied, "Hold on, we've gotta ask some questions . . . ."

- When Detective Wonderly arrived, he walked over to assess the damage to the car and determine its cause. When Torres tried to follow Detective Wonderly into the

street, both officers told him to stay by the trunk of the car.

- Detective Wonderly asked Torres how much he had had to drink that night. Torres said, "Not too much. Couple beers." Sergeant Mazone's bodycam video ends a few seconds later.

¶ 22 Detective Wonderly's bodycam video recorded the events described above beginning with his arrival on the scene. In addition, his bodycam recorded the following:

- Detective Wonderly asked Torres where he had been drinking. Torres responded that he did not remember.

- Detective Wonderly asked him, "Can we move over to this parking lot so we're not standing in the middle of the road?" Torres said, "Yeah, that's fine." At the parking lot, Detective Wonderly asked, "Would you be willing to do voluntary roadside maneuvers?" Torres responded, "Nope. I'm drunk." Detective Wonderly asked whether Torres had driven the car that night. Torres confirmed he had been driving. Torres then said, "So, here I am," turned his back to Detective Wonderly, and placed his

hands behind his back as if offering himself to be handcuffed. Detective Wonderly then arrested Torres for DUI.

¶ 23    The trial court denied the motion to suppress after finding that Torres was not in custody until Detective Wonderly handcuffed and arrested him.

### 4.    Torres Was Not in Custody

¶ 24    Torres contends that, under the factor analysis, the trial court erred by finding that he was not in custody until Detective Wonderly handcuffed and arrested him. We disagree.

- *First factor: the time, place, and purpose of the encounter.*

¶ 25    The trial court found that the encounter took place in "the middle of the night," which weighs in favor of a custody determination. *See People v. Cline*, 2019 CO 33, ¶ 22, 439 P.3d 1232, 1238 (explaining that a suspect's encounter with police officers at night weighs in favor of custody); *cf. People v. Allman*, 2012 COA 212, ¶ 49, 321 P.3d 557, 569 (concluding that an interrogation "in broad daylight" goes against a custody finding). The court further found that the encounter occurred "out in the open," which weighs against a custody finding. *See People v.*

10

*Pleshakov*, 2013 CO 18, ¶ 30, 298 P.3d 228, 235 (concluding that a conversation in "public view" weighs against a custody finding because a "passersby could have witnessed the interaction"). And the purpose of the encounter was to investigate a possible DUI. The fact that the encounter took place at night in a public location, as part of a criminal investigation, does not weigh either for or against a custody determination.

- *Second factor: the persons present during the interrogation.*

¶ 26 The trial court found that the encounter initially only involved one officer — Sergeant Mazone — and that a second officer, Detective Wonderly, arrived after Sergeant Mazone's initial interactions with Torres. Therefore, the number of persons present weighs against a custody determination. *See id.* (holding that the defendant was not in custody even though four officers were present and the defendant's conversation with one of the officers occurred in "close proximity" to two other officers).

- *Third factor: the words spoken by the officer to the defendant.*

¶ 27 The trial court found that the officers were "certainly asking questions" and "satisf[ied] an interrogation standard pretty quickly."

11

But the officers did not make any threats or promises to Torres, which weighs against a custody finding. *See Allman*, ¶ 46, 321 P.3d at 568. In addition, the officers asked Torres "open-ended questions," *People v. Willoughby*, 2023 CO 10, ¶ 31, 524 P.3d 1186, 1193, which also weighs against a custody determination.

- *Fourth factor: the officer's tone of voice and general demeanor.*

¶ 28 According to the trial court, the officers' tone of voice and general demeanor were "conversational" and "fairly friendly," which weighs against a determination that Torres was in custody. *See Sampson*, ¶ 26, 404 P.3d at 278.

- *Fifth factor: the length and mood of the interrogation.*

¶ 29 The record confirms the court's finding that Torres's interrogation was of a "pretty limited [temporal] scope." The officers testified that their interactions with Torres lasted approximately ten minutes, although the bodycam videos show that only eight minutes elapsed between the time Sergeant Mazone first contacted Torres and when Detective Wonderly handcuffed him. The brevity of an interaction between a suspect and police officers weighs against a custody determination. *See People v. Garcia*, 2017 CO

106, ¶ 37, 409 P.3d 312, 319 (concluding that the defendant was not in custody when the total length of each of his interactions with police officers was "short, each lasting less than seven minutes"); *cf. People v. Minjarez,* 81 P.3d 348, 356-57 (Colo. 2003) (noting that officers questioned the defendant for forty-five minutes, which supported the conclusion that the defendant was in custody). In addition, Torres did not attempt to end the encounter or request a lawyer, further weighing against a custody determination. *See Sampson,* ¶ 28, 404 P.3d at 278.

- *Sixth factor: whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation.*

¶ 30     The officers did not restrain Torres until he was arrested. Before that time, however, the officers made requests that limited Torres's movement. But the officers made those requests to keep Torres from being struck by a vehicle, such as when Torres was standing in the middle of the street. Safety-related officer requests are not indicative of custody. *See Niemeyer v. People,* 2024 CO 58, ¶ 39, 555 P.3d 607, 617.

- *Seventh factor: the officer's response to any questions asked by the defendant.*

13

¶ 31    Sergeant Mazone's response to Torres's question, "Are you gonna arrest me?" shows that the officers were investigating a possible crime up to the point when Detective Wonderly handcuffed and arrested Torres.  Significantly, in response to Torres's question, Sergeant Mazone said, "Hold on, we've gotta ask some questions . . . ."  Because Sergeant Mazone's response indicated that the officers were still conducting an investigation and that Torres's arrest "was not a foregone conclusion" at the time, Sergeant Mazone's response to Torres's question weighs against custody.  *Willoughby*, ¶ 37, 524 P.3d at 1194.

- *Eighth factor: whether directions were given to the defendant during the interrogation.*

¶ 32    The trial court found that the officers were "careful not to direct [Torres] too much."  For example, Detective Wonderly calmly asked Torres to walk to the parking lot rather than ordering him to move there.  Accordingly, this factor, too, does not support a custody determination.

- *Ninth factor: the defendant's verbal or nonverbal response to such directions.*

¶ 33    The trial court found that Torres was "responsive" to the officers' directions and that "much of [the officers' directions were]

14

conversational," weighing against a custody determination. *See*
*Eugene*, ¶¶ 9, 27, 555 P.3d at 604, 607 (concluding that the
defendant was not in custody when he was "responsive" and the
interrogation was "conversational").

¶ 34    In considering the custody factors, we agree with the trial
court that, although the officers "limit[ed] [Torres's] movement in
some fashion," those limitations did not rise to the degree
associated with a formal arrest because the officers made
"conversational," rather than "confrontational," requests related to
Torres's safety. *See Niemeyer*, ¶ 39, 555 P.3d at 617; *Effland*, 240
P.3d at 874.

¶ 35    Nevertheless, Torres contends that he was in custody before
Detective Wonderly handcuffed him for four reasons.

¶ 36    First, Torres argues that Sergeant Mazone placed him in
custody when Sergeant Mazone "ordered him to remain positioned
at the back of [the car]." But we are unaware of a Colorado case
supporting a determination that the officers' safety-related
restrictions on Torres's movements would have caused "a
reasonable person in [Torres]'s position [to] believe himself to be
deprived of his freedom of action to the degree associated with a

15

formal arrest." *Effland*, 240 P.3d at 874 (quoting *Hankins*, 201 P.3d at 1218); *see People v. Figueroa-Ortega*, 2012 CO 51, ¶ 8, 283 P.3d 691, 693 (holding that officers' significant infringements on a suspect's movement by "draw[ing] guns and [applying] physical restraints like the use of handcuffs" are still "not dispositive" in determining whether the suspect is in custody).

¶ 37 In addition, given the context of Sergeant Mazone's requests, we are unpersuaded by Torres's contention that Sergeant Mazone improperly "established . . . control over [Torres]'s physical autonomy" by telling Torres "to remain positioned" at the back of the car. As noted above, Sergeant Mazone's bodycam video shows that Torres had difficulty maintaining his balance and that Sergeant Mazone gave Torres directions to keep him from falling or walking into the street. *See Niemeyer*, ¶ 39, 555 P.3d at 617 (holding that an officer's safety-related requests are not indicative of custody).

¶ 38 Second, Torres contends that, even if he was not in custody when Sergeant Mazone asked him to stay near the car, he was in custody "when Detective Wonderly arrived on scene." In support of this contention, Torres argues that Sergeant Mazone impermissibly

16

restricted his movement by telling him not to follow Detective Wonderly into the street when Detective Wonderly walked over to the car to check it for damage and when Sergeant Mazone asked Torres to "lean up against [the] car" to avoid falling. For the reasons explained above, however, we are unpersuaded that the officers' restrictions that kept Torres from falling over or straying into the street are indicia of custody. And, as noted above, the presence of two uniformed officers does not establish that a suspect was in custody. *See Pleshakov*, ¶ 30, 298 P.3d at 235.

¶ 39 Third, Torres argues he was in custody when Sergeant Mazone "effectively announced that [Torres] was suspected of criminal conduct" by telling police dispatch that "this will be an intoxicated party" and "[t]his will be a DUI." Sergeant Mazone indeed said in Torres's presence that he was investigating Torres for DUI. But we are unaware of any Colorado case suggesting that an officer's statement to a third party that the potential suspect overhears can support a custody determination. Rather, the United States Supreme Court suggested that these types of statements, even when directed to the defendant, do not support a custody determination. *See Oregon v. Mathiason*, 429 U.S. 492, 493, 495

17

(1977) (concluding that the defendant was not in custody even though an officer told him that the police believed he was involved in a burglary and falsely said that the defendant's fingerprints had been found at the crime scene).

¶ 40    Fourth, Torres contends that he was in custody when Detective Wonderly "directed [him] away from [the car] and across the street to the sidewalk." But, again, Detective Wonderly asked Torres to move off the street for safety reasons. As discussed above, officer safety-related requests are not an indicator of custody. *See Niemeyer*, ¶ 39, 555 P.3d at 617.

¶ 41    In sum, Torres was not in custody under the factor analysis. *See Effland*, 240 P.3d at 874. Thus, we reject Torres's argument that the trial court erred by finding he was not in custody until Detective Wonderly handcuffed and arrested him.

¶ 42    In addition, Torres argues that his inculpatory statements to the officers resulted from an improper interrogation. We need not reach this argument, however, because, as explained above, Torres was not in custody when he made the statements.

## B. The Trial Court Properly Limited Defense Counsel's Cross-Examination of Officer Gustafson

### 1. Standard of Review

¶ 43 Trial judges retain "wide latitude" to exclude evidence "through the application of evidentiary rules." *Krutsinger v. People*, 219 P.3d 1054, 1062 (Colo. 2009). Accordingly, they possess the "discretion to impose limits on cross-examination of witnesses, and we will not disturb rulings on those limits absent an abuse of that discretion." *Margerum v. People*, 2019 CO 100, ¶ 9, 454 P.3d 236, 239. "A trial court abuses its discretion when it misconstrues or misapplies the law, or when its decision is manifestly arbitrary, unreasonable, or unfair." *People v. Knapp*, 2020 COA 107, ¶ 31, 487 P.3d 1243, 1252.

### 2. Additional Facts

¶ 44 After the court admitted the certified records into evidence, defense counsel sought to cross-examine Officer Gustafson, who had laid the foundation for the records' admission, regarding the information documented in the "convictions" section of a DMV driver history.

¶ 45    Officer Gustafson testified that the DMV has its own administrative courts that are separate from criminal courts; those administrative courts conduct hearings; and that, at such hearings, the DMV's burden of proof is lower than prosecutors' burden of proof in criminal cases. But the prosecutor objected before defense counsel could ask Officer Gustafson about this lower burden of proof.

¶ 46    The court sustained the objection. In response, defense counsel explained that she sought to establish through this line of questioning that "DMV courts are separate from criminal courts." During a bench conference, defense counsel argued that she was entitled to attempt to establish, through Officer Gustafson, that one or more of the convictions shown on Torres's certified DMV driver history could be administrative. She said that, if so, the jury could not consider the administrative convictions when determining whether Torres was guilty of felony DUI. The prosecutor responded that defense counsel's assertion was "not correct" because Torres's driver history documented four prior convictions in courts of law. The court again sustained the prosecutor's objection.

¶ 47    After the jury left for the day, defense counsel asked the court to reconsider its decision.  Defense counsel argued that, because section 42-2-127, C.R.S. 2025, requires the DMV to consider a failure to appear in court or a bond forfeiture "as a conviction," the convictions shown in Torres's certified DMV driver history may have merely resulted from his failure to appear at a DMV hearing or his forfeiture of a bond.  The court denied the motion to reconsider.

### 3.    Convictions in DMV Records

¶ 48    Torres contends that the court erred by refusing to allow defense counsel to establish through Officer Gustafson that "the 'convictions' listed in DMV records encompass administrative determinations and procedural outcomes that do not qualify as 'convictions'" under section 42-4-1301 — the felony DUI statute.  We disagree.

¶ 49    Title 42, which houses Colorado's vehicle and traffic statutes, indeed contains more than a single definition of "conviction."  For purposes of articles 1 through 4 of title 42, "unless the context otherwise requires," a "conviction" includes pleas of guilty or nolo contendere, guilty verdicts, adjudications of juvenile delinquency, and payments of a penalty assessment for offenses that are eligible

21

for "points," as well as convictions only applicable to commercial license holders. § 42-1-102(19), C.R.S. 2025.

¶ 50     Torres focuses on the definition of "conviction" found in section 42-2-127, which governs the DMV's authority to suspend a driver's license based on a driver's accrual of a certain number of traffic violation points within a certain time period. The relevant language of the statute says:

> For the purposes of this article, a plea of no contest accepted by the court or the forfeiture of any bail or collateral deposited to secure a defendant's appearance in court or the failure to appear in court by a defendant charged with DUI, DUI per se, or [underage drinking and driving] who has been issued a summons and notice to appear pursuant to section 42-4-1707[, C.R.S. 2025,] as evidenced by records forwarded to the department in accordance with the provisions of section 42-2-124[, C.R.S. 2025,] shall be considered as a conviction.

§ 42-2-127(6)(b).

¶ 51     The definition of "conviction" in section 42-2-127(6)(b) appears to conflict with the definition of the word in section 42-1-102(19). The former statute says that failures to appear and bond forfeitures for particular offenses must be "considered as a conviction." Section 42-2-127, which authorizes the DMV to suspend licenses

22

for a defendant's failure to appear on a DUI charge, says that this definition of "conviction" applies to the entirety of title 42, article 2. § 42-2-127(6)(b).  For this reason, Torres asserts that, under section 42-2-127(6)(b), failures to appear and bond forfeitures are reported as "convictions" in DMV driver histories, even though they cannot support a felony DUI conviction.

¶ 52     However, even if Torres's statutory analysis is correct, the trial court found that the only conviction information documented in Torres's DMV driver history "appear[ed] to reflect *criminal* convictions."  (Emphasis added.)  Although we acknowledge that he did not bear the burden of proof on this issue, significantly, Torres does not dispute the court's finding; he cites no part of the record indicating that any of the convictions in *his* DMV driver history were entered through an administrative action.

¶ 53     But even if we were to assume that failures to appear and bond forfeitures for DUIs can be listed as "convictions" in a DMV driver history, the DMV would still be required to distinguish between those types of convictions and convictions resulting from criminal trials in a court of law.  Section 42-2-121(2)(a), C.R.S. 2025, specifies that the DMV must make "suitable notations [on a

23

driver history so that] an individual record of each licensee" distinguishes between "the convictions of such licensee" and "the departmental actions."

¶ 54    Because the "convictions" section of Torres's DMV driver history only appears to "reflect criminal convictions," we are not persuaded that those convictions could have resulted from administrative proceedings.  Furthermore, unlike the "convictions" section, the "withdrawal of privilege" section of Torres's DMV driver history includes references to "Admin" proceedings.  This tells us that Torres was convicted of DUI or DWAI in a court of law on at least four prior occasions.

¶ 55    For these reasons, we conclude that the trial court did not err by precluding defense counsel from cross-examining Officer Gustafson on the meaning of "conviction" in DMV driver histories. *See Krutsinger*, 219 P.3d at 1062.

## C. The Court Did Not Plainly Err by Admitting the DMV Records Custodian's Attestation into Evidence

### 1. Standard of Review

¶ 56 "We review de novo a defendant's contention that the trial court violated [his] Confrontation Clause rights." *People v. Phillips*, 2012 COA 176, ¶ 85, 315 P.3d 136, 157.

¶ 57 On appeal, Torres contends that the court violated his Confrontation Clause rights by admitting into evidence the DMV records custodian's attestation, attached to his certified DMV driver history, that said, "[a] search of our records has revealed that this is the only subject with this name and date of birth." He did not preserve this contention, however.

¶ 58 Because Confrontation Clause violations are trial errors, we review unpreserved arguments regarding such constitutional violations under the plain error standard. *People v. Vigil*, 127 P.3d 916, 929-30 (Colo. 2006). An error is plain if it is "obvious and substantial." *Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116, 120. An error is obvious if it is "so clear-cut" that "a trial judge should be able to avoid it without benefit of objection." *People v. Crabtree*, 2024 CO 40M, ¶ 42, 550 P.3d 656, 667 (quoting *Romero*

*v. People*, 2017 CO 37, ¶ 6, 393 P.3d 973, 976).  The defendant bears the burden to establish that an error occurred and that it was obvious and substantial.  *See Kaufman v. People*, 202 P.3d 542, 549 (Colo. 2009).

¶ 59    Under the plain error standard, "we need not decide whether the court actually erred if it is clear that the alleged error was not obvious."  *People v. Vigil*, 251 P.3d 442, 447 (Colo. App. 2010).

### 2.    Additional Facts

¶ 60    The first page of Torres's certified DMV driver history contained the following attestation by the custodian of records: "A search of our records has revealed that [Torres] is the only subject with this name and date of birth."

¶ 61    At trial, defense counsel did not object to the admission of the attestation into evidence.  Further, the court never mentioned it, the prosecutor did not refer to it during closing argument, and the jury did not submit questions about it.

### 3.    The Attestation Was Not Obviously Testimonial

¶ 62    Torres's attestation argument fails unless the document was (1) testimonial and (2) so clearly testimonial that the trial judge should have recognized, "without benefit of objection," that the

26

attestation was inadmissible unless the court allowed defense counsel to cross-examine the custodian. *Crabtree*, ¶ 42, 550 P.3d at 667 (quoting *Romero*, ¶ 6, 393 P.3d at 976).

¶ 63 The Confrontation Clause says, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. However, "the Confrontation Clause is implicated only when 'testimonial' hearsay statements are at issue." *People v. Perez*, 2024 COA 94, ¶ 12, 559 P.3d 652, 656 (quoting *Crawford v. Washington*, 541 U.S. 36, 51 (2004)).

¶ 64 "The 'core class of testimonial statements' includes 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id.* at ¶ 13, 559 P.3d at 656 (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009)).

¶ 65 In *Melendez-Diaz*, the United States Supreme Court held that "a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it" was testimonial because it served "as substantive evidence against the defendant

27

whose guilt depended on the nonexistence of the record for which the clerk searched."  557 U.S. at 323.

¶ 66    Torres argues that, like the attestation in *Melendez-Diaz*, the attestation in his case was testimonial because it functioned as a "certificate of non-existence."  But unlike the document at issue in *Melendez-Diaz*, the attestation in this case did not say that the custodian was unable to find a particular record.  Rather, it said that the custodian had conducted a search of the DMV records for an Anthony David Torres with a certain date of birth; such search revealed that Torres was the "only subject with this name and date of birth"; and the DMV records contained ten documents for Torres.

¶ 67    We agree with Torres that the prosecution requested the DMV records search and the attestation.  Thus, the attestation was prepared with the belief that the attached records "would be available for use at a later trial."  *Perez*, ¶ 13, 559 P.3d at 656 (quoting *Melendez-Diaz*, 557 U.S. at 310).

¶ 68    But Torres does not cite any case law or other legal authority holding that the admission of an attestation saying that the custodian of records' search "revealed that this is the only subject with this name and date of birth" can result in a Confrontation

Clause violation.  Even if we accept Torres's argument concerning the nature of the attestation, we cannot conclude that it was obvious to the trial court that the attestation was testimonial and, thus, was inadmissible unless defense counsel was granted the right to cross-examine the records custodian.

¶ 69    Torres rests his obviousness argument on a single legal authority — *Melendez-Diaz.*  Yet, as noted above, it was not obvious to the trial court that a Supreme Court case analyzing a differently phrased attestation required the trial court to deny the prosecution's request in this case to admit the attestation into evidence if the custodian was unavailable for cross-examination.  Thus, the admission of the attestation did not constitute plain error because it did not "contravene a clear statutory command, a well-settled legal principle, or established Colorado case law."  *Crabtree*, ¶ 42, 550 P.3d at 667.

¶ 70    Because the attestation was not obviously testimonial, we reject Torres's contention that the court plainly erred by admitting it into evidence.

### III.   Disposition

¶ 71    The judgment is affirmed.

JUDGE WELLING and JUDGE TOW concur.